USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/25/2020

ANNA FU,

                    Plaintiff,

          v.

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                    Defendant

No. 16-CV-04017 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Anna Fu commenced this action against Defendant Consolidated Edison Company of New York, Inc. ("Con Edison"), asserting claims for race discrimination, age discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 *et seq.*, as well as interference with rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* Before the Court is Defendant's motion for summary judgment. For the reasons that follow, the motion is granted.

## FACTUAL BACKGROUND[1]

Plaintiff is an Asian American woman who was over 40 years old at the time of the

---

[1] The following facts are drawn from the parties' Rule 56.1 Statements and their submissions in connection with Defendant's motion for summary judgment. Where facts in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence and denied only by way of a conclusory statement by the other party, without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rules 56. l(c)-(d).

events in question.  Def. Rule 56.1 Stmt. ¶ 2.  Plaintiff was employed by Con Edison, a

Manhattan-based public utility company, from 1982 until she was terminated in May 2015.  *Id.*

¶¶ 1, 3.  From April 2012 until the end of her employment, she was a Senior Engineer in the

System Performance Section (previously known as the Bulk Power System Performance,

Analysis, and Planning Section) of Con Edison's System and Transmission Operations

Department.  *Id.* ¶ 4; Pl. Aff. ¶¶ 2, 4.  Martin Paszek is the Section Manager of the System

Performance Section and served as Plaintiff's direct supervisor.  Def. Rule 56.1 Stmt. ¶ 5; Paszek

Aff. ¶ 1; Pl. Aff. ¶ 4.  Paszek reports to Michael Forte, the Chief Engineer in the System and

Transmission Operations Department.  Def. Rule 56.1 Stmt. ¶ 5; Forte Aff. ¶ 2.  Starting in May

2013, Edwin Thompson became Plaintiff's team leader on a team within the System

Performance Section that was primarily responsible for the development and testing of System

Restoration Plans.  Def. Rule 56.1 Stmt. ¶ 7; Paszek Aff. ¶ 2; Pl. Aff. ¶ 4.

Some of Plaintiff's former co-workers and supervisors submitted affidavits in which they

described her as "professional," Santalesa Aff. ¶ 1, "intelligent" and "kind," Reilly Aff. ¶ 2,

"diligent," Shansky Aff. ¶ 3, and "hardworking and a team player." Mui Aff. ¶ 2.  All of the co-

workers who submitted affidavits on Plaintiff's behalf worked with her before she began

working for Thompson's team in May 2013.

Plaintiff received positive performance reviews from the beginning of her employment in

1982 until she was assigned to work for Thompson.  Pl. Rule 56.1 Stmt. ¶¶ 1-2; Pl. Aff. ¶ 3.

Plaintiff's positive performance reviews included those she received while working in the Long

Range Planning Section within the Systems and Transmission Operations Department from 2005

to 2012, and those she received after she started working in the System Performance Section in

April 2012 but before she began working with Thompson in May 2013.  Pl. Aff. ¶ 3; Pl. Aff. Ex.

A.  For example, in a 2012 performance review administered on March 10, 2013, Paszek stated that Plaintiff "communicates her study findings in a clear and logical manner," "responds to customer requests and problems in an appropriate and timely manner," "met the deadlines set for assignments," "uses sound judgment and evaluates all appropriate information and alternatives before embarking on a course of action," and was "guide[d] [in] her decision making" by her 30 years of experience.  Pl. Aff. Ex. A ("2012 Performance Review").  The 2012 performance review contained only two qualifiers: (1) that although Plaintiff's "performance in [communication] is satisfactory," it is "an area of improvement where [Plaintiff] is encouraged to find opportunities to add value to meetings," and (2) that although Plaintiff "can be counted on to complete her assignments on time and correctly . . . some supervision is require[d] as it relates to project scheduling and overall requirement of a given project."  *Id*.  In addition to receiving positive performance reviews, Plaintiff received a "Technology Transfer" award from the Electric Power Research Institute in 2012 in recognition of her transmission reliability research.  Pl. Aff. ¶ 3.

Plaintiff alleges that starting in 2013, she was forced to correct Edwin Thompson's mistakes and faulty work.  Pl. Rule 56.1 Stmt. ¶ 4; Pl. Aff. ¶ 4.  She claims that when she identified a technical issue in March 2013 that resulted from Thompson's failure to perform a required analysis, she was subjected to increased scrutiny from Paszek and Forte.  Pl. Aff. ¶ 4.  She further contends that once Thompson became her Team Leader in May 2013, a systemic attempt was made to discredit her efforts.  *Id*.

Plaintiff's 2013 mid-year and final performance reviews, administered by Paszek on September 13, 2013 and March 3, 2014, respectively, were significantly less positive than her earlier reviews.  Def. Rule 56.1 Stmt. ¶ 8; Paszek Aff. ¶ 3; Levin Decl. Ex. A at Ex. 3 ("2013

Performance Review"). Paszek noted that in light of Plaintiff's senior title and years of experience, the "expectation is that she can perform complex short circuit, power flow, and stability studies in a timely manner." 2013 Performance Review. However, he stated that Plaintiff's "performance is lacking" as the "assigned task[s] are not done in a timely manner and lack technical and overall presentation detail that is expected from a Senior Engineer." *Id.* He also stated that Plaintiff "appears to be uncomfortable speaking with other co-workers" and "could improve her performance by improving her working relationship with others." *Id.* In particular, he cited an incident in which Thompson asked for Plaintiff's help but she "cut him off and said she was too busy and could not help him." *Id.* Paszek then provided Plaintiff with an overall rating of "Needs Some Improvement." *Id.* at 6. Plaintiff documented her disagreement with Paszek's assessment on her Performance Review, stating, "In the past 30 years, I have always had good reviews, good relationships with my Managers and co-workers, and always completed my work satisfactorily." *Id.* at 2; *see also* Pl. Aff. Ex. D. According to Paszek, in the same 2013 review period, he rated one white male employee as "Needs Some Improvement," three white male employees as "Fully Effective," and one white female employee as "Exceeds Expectations." Paszek Aff. ¶ 3.

On November 18, 2014, Plaintiff filed a complaint with Richard Bagwell, Con Edison's Vice President of Human Resources, "regarding the ongoing discrimination and harassment" she was facing at the time. Pl. Aff. ¶ 7. Plaintiff also alleges that from December 2014 through January 2015, she filed several additional complaints with Christine Roman, a Human Resources representative. *Id.* In Plaintiff's deposition, she testified that she complained to Roman about "unfair treatment," but admitted that she never told Roman she was being treated unfairly due to her race or age. Pl. Dep. Tr. 97:20-23. Plaintiff says that Human Resources initially told her that

an investigation was being conducted, but on or about January 28, 2015, they told that her no further action would be taken. Pl. Aff. ¶ 7.

In her 2014 year-end Performance Review, administered on February 3, 2015, Paszek rated Plaintiff's performance "Unsatisfactory." Def. Rule 56.1 Stmt. ¶ 11; Paszek Aff. ¶ 5 & Ex. A ("2014 Performance Review"), at 7. In it, he provided a detailed assessment of Plaintiff's allegedly unsatisfactory performance with respect to her assigned tasks and alleged failure to complete those tasks in a timely manner. *See* 2014 Performance Review at 3-4. He also noted Plaintiff's "recurring unacceptable behavior" communicating with her coworkers and stated that her "verbal communication with her Team Leader was often combative and argumentative." *Id*. at 5. Paszek recommended that Plaintiff attend a communication training session. Paszek Aff. ¶ 6; Pl. Aff. ¶ 8. Plaintiff again noted her disagreement with the review. *See* 2014 Performance Review at 8-9; *see also* Pl. Aff. Ex. E. On February 5, 2015, Plaintiff met with Vincent Frankel, a Director at Con Edison, to discuss the performance review and her belief that Paszek, Thompson, and Forte were discriminating against her. Pl. Aff. ¶ 8.

Plaintiff was the only employee who reported to Paszek during the 2014 review period whose performance he rated "Unsatisfactory." Paszek Aff. ¶ 13. He rated one white male employee as "Needs Some Improvement"; one white male employee, one Asian male employee, and two white female employees as "Fully Effective"; and one white male employee as "Exceeds Expectations." *Id*.

As a result of her unsatisfactory performance, Plaintiff was placed on a Performance Improvement Notice, known as a "PIN." Def. Rule 56.1 Stmt. ¶ 11; Paszek Aff. ¶ 7; Forte Aff. ¶ 4. Defendant alleges Plaintiff was given three PIN assignments to demonstrate her ability to perform her work satisfactorily. Def. Rule 56.1 Stmt. ¶ 13; Paszek Aff. ¶ 7. Plaintiff claims,

however, that while she was in the middle of her third assignment, Paszek decided it was "too easy" and gave her a fourth assignment. Pl. Aff. ¶¶ 12-13. Paszek maintains that Plaintiff's work on each PIN assignment was unsatisfactory. Def. Rule 56.1 Stmt. ¶ 15; Paszek Aff. ¶¶ 8-10, 12 & Ex. B-C. Plaintiff disputes this characterization. Pl. Aff. ¶ 12. Specifically, Paszek asserts that Plaintiff's first assignment was "substantially wrong—showing incorrect results in a way that [Plaintiff], or any competent engineer, should have recognized to be incorrect." Paszek Aff. ¶ 8 & Ex. B. Plaintiff claims that Paszek provided conflicting instructions on the first assignment and subjected her to "psychological abuse." Pl. Aff. ¶ 9. But when Paszek and Plaintiff met to discuss the assignment, Paszek says Plaintiff "insisted that [Paszek] must have been wrong." Paszek Aff. ¶ 8. By contrast, Plaintiff insists that she "did not argue" with Paszek, but rather "followed his instructions as he requested" and "quickly made minor modifications to address [his] comments." Pl. Aff. ¶ 9.

Paszek also claims that Plaintiff submitted incorrect results on her second assignment and continued to make errors even after she was given a second chance to re-do the assignment. Paszek Aff. ¶ 9 & Ex. C. Plaintiff again disputes this characterization, asserting that she "followed Martin Paszek's written and verbal instructions exactly" even though he repeatedly changed the instructions and "falsely accused" her of making errors. Pl. Aff. ¶ 9. Plaintiff, Paszek, and Thompson met to discuss the second PIN assignment on March 4, 2015. *Id*. at ¶ 10. Paszek alleges that during the meeting, Plaintiff "became argumentative and refused to accept the fact that she was wrong in her analysis" and "stormed out of the meeting saying that she was 'going to HR.'" Paszek Aff. ¶ 9. Plaintiff, by contrast, claims that in the meeting Paszek stated that Plaintiff was "too old and too slow" when compared with other younger employees in the

department.  Pl. Aff. ¶ 10; Pl. Dep. Tr. at 27:5-28:20.[2]  She further alleges that both Paszek and Thompson "threatened and harassed [her] and psychologically abuse[d] [her] for about 45 minutes while raising their voices."  *Id*.  Paszek denies ever calling Plaintiff "old" or making any other reference to her age.  Paszek Aff. ¶ 14.  Paszek also points out that three of the employees who worked in his section were older than Plaintiff, including Thompson, and that Paszek's supervisor, Forte, is also older than Plaintiff.  *Id*.  Paszek further denies that Plaintiff's age or national origin factored into his evaluation of Plaintiff's work performance.  *Id*. ¶¶ 14-15.

On March 6, 2015, Plaintiff filed a complaint with Nicole Leon, Con Edison's EEO Director, regarding Paszek's alleged comment that she was "too old and too slow," as well as Plaintiff's perception that she was facing ongoing discriminatory treatment from Paszek and Thompson.  Pl. Aff. ¶ 11.  On March 12, 2015, Plaintiff received an email from Con Edison's Office of Diversity and Inclusion stating that an individual was assigned to her case.  *Id*. ¶ 11 & Ex. F.[3]

Plaintiff alleges that the stresses at work caused her to experience anxiety, heart palpitations, a sleeping disorder, digestive problems, and difficulty breathing, and that her doctors recommended that she take time off work.  Pl. Aff. ¶ 11.  Accordingly, Plaintiff was approved for short-term disability and FMLA benefits and took twelve days of leave from March 30 to April 14, 2015.  *Id*. ¶¶ 11, 14 & Ex. G; Def. Rule 56.1 Stmt. ¶ 14; Paszek Aff. ¶ 10.  Paszek

---

[2] Plaintiff initially testified that "Martin [Paszek] and Ed Thompson say that I was . . . too old as compared to the younger employees," Pl. Dep. Tr. at 24:2-4, and that "Ed also say I am too old to do the job," *id*. at 24:23-24, but when Defendant's counsel sought clarification as to who told Plaintiff that she was too old, she testified, "Martin say I was but they all, both of them kept saying that I am too old. No. I am being too slow working as compared to younger employee in the section," *id*. at 28:16-20.  When Defendant's counsel again asked Plaintiff if Thompson ever made "any reference" to her age, she answered "no." *Id*. at 31:22-32:2.  Plaintiff's affidavit attributes the "too old and too slow" comment only to Paszek, rather than to both Paszek and Thompson.  Pl. Aff. ¶ 10.  The Court therefore concludes that Thompson did not make any comments regarding Plaintiff's age.
[3] Defendant's assertion that Plaintiff was first contacted by Con Edison's EEO office concerning her complaint in mid-May 2015 is therefore inaccurate. *See* Def. Rule 56.1 Stmt. ¶ 24.

claims that Plaintiff took the twelve days of leave after receiving her third PIN assignment, but that when she returned from leave, she complained that she lacked sufficient training to complete the third assignment. Paszek Aff. ¶ 10. He alleges that he reminded her of the training she had received and explained how she should complete the assignment, but she nonetheless failed to complete it in an adequate or timely manner. *Id*. Plaintiff disputes this characterization, claiming she completed all three required PIN assignments successfully and on time. Pl. Aff. ¶ 12. Plaintiff claims that the third PIN assignment was due on April 6, 2015, but that while she was in the middle of the assignment on March 23, 2015, Paszek stopped her and told her it was "too easy" and assigned her a fourth assignment. *Id*. ¶¶ 12, 15. Plaintiff further alleges that she planned to take a vacation from April 27 through April 30, 2015 with the knowledge that she would be able to complete the third PIN assignment ahead of the April 6, 2015 due date. *Id*. ¶ 12. She also contends that the fourth assignment contained work outside of her job functions, that she was given unreasonable deadlines, and that her request to receive training necessary to complete the assignment was denied. *Id*. She further claims that when she asked clarifying questions, Paszek told her she should "know everything as a Senior Engineer with 30 years plus experience," and that she was set up for failure. *Id*. Plaintiff alleges that despite these obstacles, she provided her analyses and summary on May 8 and 13, 2015 and that Paszek did not dispute the accuracy of her analyses at the time. *Id*.

On May 5, 2015, Plaintiff met with Lonnie Allbaugh, an EEO representative, to discuss her EEO Complaint. Pl. Aff. ¶ 16. On May 13, 2015, Plaintiff emailed Allbaugh that she was "still being harassed" by Paszek and stated, "He will not adjust the target completion date to compensate for vacation time I took and which I needed." *Id*. at Ex. H. She also noted, "I still disagree with the target date because the assignment involves technical areas I never had training

for and I am told I will not be getting training for." *Id.* On May 14, 2015, Allbaugh emailed Plaintiff that the EEO investigation was proceeding as the EEO office was interviewing witnesses and gathering information. *Id.*

Paszek and Forte contend that in "early" May 2015, they met to discuss Plaintiff's performance during the PIN. Paszek Aff. ¶ 12; Forte Aff. ¶ 5. Forte concurred with Paszek's assessment that Plaintiff's work did not satisfy the requirements of her PIN. Forte Aff. ¶ 5. Accordingly, Forte determined that the work produced by Plaintiff did not demonstrate the ability to perform the essential work of a Senior Engineer in the Bulk Power System Analysis and Planning Section. *Id.* Forte therefore recommended the termination of Plaintiff's employment to his supervisor, Brian Horton, the Vice President of System and Transmission Operations. *Id.* Forte asserts that the Human Resources Department concurred that Plaintiff would be terminated for poor performance. *Id.* Forte then advised Paszek that the decision had been made to terminate Plaintiff. Paszek Aff. ¶ 12. Defendant asserts that the decision to terminate Plaintiff was made in "mid" May 2015. Def. Rule 56.1 Stmt. ¶ 16.

According to Forte, at the time he reviewed Plaintiff's performance on the PIN, and during his discussions about Plaintiff's termination with Paszek, Horton, and the Human Resources Department, he was not aware that Plaintiff had filed a complaint of discrimination to Con Edison's EEO office. Forte Aff. ¶ 6. Defendant claims that Paszek was also not aware of Plaintiff's EEO complaint. Def. Rule 56.1 Stmt. ¶ 25. It is unclear from the factual record, however, whether Paszek and Forte's meeting in "early" May to discuss Plaintiff's performance on the PIN occurred before or after Plaintiff's May 5, 2015 meeting with Allbaugh. It is also unclear whether the decision to terminate Plaintiff was made before or after Allbaugh emailed Plaintiff on May 14, 2015 that the investigation into her EEO complaint was "proceeding" and

that "[w]itnesses are being interviewed and information is being gathered." Pl. Aff. Ex. H.

Finally, it is unclear whether the EEO office interviewed Forte, Paszek, and Thompson, and if so, when those interviews occurred.

Plaintiff claims that she was approved for additional short-term disability and FMLA leave from May 15, 2015 until May 26, 2015. Pl. Rule 56.1 Stmt. ¶ 7; Pl. Aff. ¶ 17. However, on May 19, 2015,[4] Paszek informed Plaintiff that her employment was terminated due to her failure to meet the requirements of her PIN. Def. Rule 56.1 Stmt. ¶ 17; Paszek Aff. ¶ 13. The termination of Plaintiff's employment also terminated her benefits. Pl. Aff. ¶ 17 & Ex. I. Plaintiff asserts that under Con Edison's normal Human Resources termination process, employees are given six months to improve in deficient areas, whereas she was given less than four months. Pl. Aff. ¶ 18.

Plaintiff and her prior attorney appealed Plaintiff's termination through Con Edison's internal management appeal process on May 22, 2015. Def. Rule 56.1 Stmt. ¶ 18; Levin Decl. Ex. A ("Internal Appeal") at 3-5. They did not raise race or age discrimination in Plaintiff's Internal Appeal. Def. Rule 56.1 Stmt. ¶ 21; Internal Appeal. However, Plaintiff's prior attorney claimed that Forte and Paszek began to "treat her differently" in 2012 and that Paszek "often spoke to her in a harsh, degrading, and belittling manner." Internal Appeal at 4. He also alleged that Forte and Paszek created a "hostile work environment" for Plaintiff by engaging in conduct that "seemed personalized and outside the scope of professionalism," such as lodging "unjustified complaints about [Plaintiff]'s medical leave and use of earned vacation time." *Id*.

He stated that the "reason for the change" was "an outside dispute between Mr. Forte and

---

[4] While Defendant identifies the date of Plaintiff's termination as "on or about May 20, 2015," Def.'s Rule 56.1 Stmt. ¶ 3, Plaintiff claims that she was terminated on May 19, 2015, and that date is also reflected in the June 3, 2015 letter Plaintiff received from MetLife regarding her short term disability benefits. Pl.'s Rule 56.1 Stmt. ¶ 7; Pl. Aff. ¶ 17 & Ex. I.

[Plaintiff] concerning the care of" a former Con Edison employee who was elderly and in failing health. *Id*. In 2012, Forte and Plaintiff became involved in a contentious guardianship proceeding regarding the care of their former coworker. *Id*. at 5. The Internal Appeal stated that Paszek began to harass Plaintiff by criticizing her work shortly after Plaintiff became the legal guardian of the former coworker. The Internal Appeal further provided that the grounds for Plaintiff's termination were "pretextual" and that the guardianship dispute "was the basis of terminating" Plaintiff. *Id*. In a follow-up letter to Con Edison dated June 12, 2015, Plaintiff again reiterated, "The actual reason for my termination was discriminatory treatment and retaliation by Michael Forte against me due to a non-work related dispute we had over the care of our mutual friend." *Id*. at 2. Forte alleges that the guardianship dispute played no role in his decision to terminate Plaintiff's employment. Forte Aff. ¶ 7.

## PROCEDURAL HISTORY

After receiving notice of her right to sue from the Equal Employment Opportunity Commission, Plaintiff filed the Complaint in this action on May 29, 2016, asserting claims for race discrimination, age discrimination, and retaliation in violation of Title VII, the ADEA, the NYSHRL, and the NYCHRL, as well as interference with rights under the FMLA. Dkt. 1. Plaintiff was represented by counsel in this matter until September 8, 2017. Dkt. 35. Since that time, Plaintiff has proceeded *pro se*. Dkt. 37.

After the parties completed discovery, Defendant filed the instant motion for summary judgment on April 30, 2019. Dkt. 66. Plaintiff opposed Defendant's motion on May 14 and 28, 2019, Dkts. 77-86, 90, and Defendant replied in support of its motion on June 12, 2019, Dkt. 101. After Plaintiff filed a letter in response to Defendant's reply on August 20, 2019, Dkt. 102, Defendant responded to Plaintiff's letter on September 13, 2019, Dkt. 106.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations omitted). To survive summary judgment, "a plaintiff must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 101 (2d Cir. 2010) (internal quotation marks and citation omitted). In deciding such a motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *CILP Assocs., L.P. v. Price Waterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and alteration omitted).

Moreover, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned."

*Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (*per curiam*) (citation and alteration omitted).

Thus, "[c]ourts read the pleadings, briefs, and opposition papers of pro se litigants 'liberally and

interpret them to raise the strongest arguments that they suggest.'" *Rivera v. Goulart*, No. 15-CV-

2197 (VSB), 2018 WL 4609106, at *3 (S.D.N.Y. Sept. 25, 2018) (quoting *McPherson v. Coombe*,

174 F.3d 276, 280 (2d Cir. 1999)). The Court applies the liberal standard afforded to *pro se*

litigants to Plaintiff's submissions in opposition to the motion before the Court, as Plaintiff's

counsel withdrew and Plaintiff entered a *pro se* appearance before Defendant filed its motion. *See*

Dkts. 35, 37.

## DISCUSSION

### I.    Federal and NYSHRL Discrimination Claims

The Complaint asserts claims for race discrimination under Title VII and the NYSHRL

and age discrimination under the ADEA and the NYSHRL.[5] These claims are all subject to the

familiar burden-shifting standard set forth in the *McDonnell Douglas* case. *See Gorzynski*, 596

F.3d at 106 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973)); *Weinstock v.

Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (finding that a NYSHRL claim can be

evaluated according to the same standard as a Title VII claim). "To state a prima facie case of

race discrimination, a plaintiff must proffer evidence that (1) [s]he belongs to a protected group;

(2) [s]he was qualified for his position; (3) [her] employer took an adverse action against [her];

and (4) the adverse action occurred in circumstances giving rise to an inference of race

discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). Similarly, to

establish a prima facie case of age discrimination, "a claimant must demonstrate that: 1) [s]he

---

[5] Defendant also argues that Plaintiff has not met her burden of establishing a *prima facie* case for sex discrimination. Def. MSJ at 5-7. Yet given that Plaintiff never brought a cause of action for sex discrimination and conceded in her deposition that she never faced sex discrimination, the Court does not address Defendant's arguments on this point. *See* Pl. Dep. Tr. at 20:21-21:4.

was within the protected age group; 2) [s]he was qualified for the position; 3) [s]he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003) (internal citations and quotation marks omitted); *see also Gorzynski*, 596 F.3d at 106-07.

"[O]nce a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Id*. at 138 (citing *McDonnell Douglas*, 411 U.S. at 802). "The defendant need not persuade the court that it was actually motivated by the proffered reason[ ]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted). "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for race [or age] discrimination." *Kirkland*, 760 F.3d at 225 (citing *McDonnell Douglas*, 411 U.S. at 802); *see also Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 26 (2d Cir. 2015).

### A. Race Discrimination

It is undisputed that Plaintiff is an Asian American woman and that her employment was terminated. Def.'s Rule 56.1 Stmt. ¶¶ 2, 17; Pl.'s Resp. Def.'s Rule 56.1 Stmt. ¶ 2. Plaintiff therefore easily establishes the first and third prongs of her prima facie case of race discrimination. *See Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 13 (2d Cir. 2019).

Plaintiff, however, has failed to proffer any evidence that the adverse action occurred under circumstances giving rise to an inference of race discrimination. Plaintiff admits that Forte, Paszek, and Thompson never made any statement about or reference to her race, *see* Pl. Dep. Tr. at 25:5-7, 31:13-21, and she has not provided any circumstantial evidence that supports an inference of race discrimination. Defendant, by contrast, introduced circumstantial evidence demonstrating that Plaintiff was not singled out for adverse treatment due to her race. In the

same 2014 review period in which Paszek rated Plaintiff's performance "Unsatisfactory," for example, he rated one white male employee as "Needs Some Improvement"; one white male employee, one Asian male employee, and two white female employees as "Fully Effective"; and one white male employee as "Exceeds Expectations." Paszek Aff. ¶ 13. The fact that Paszek assigned favorable ratings and unfavorable ratings to both white and Asian employees suggests that his ratings were not based on race. Because Plaintiff has not introduced any competing evidence suggesting that Paszek, Forte, or any other Con Edison employee ever considered her race when deciding to terminate her, she fails to make out the third prong of her prima facie case. Additionally, as discussed below, there is overwhelming evidence that Plaintiff's performance was unsatisfactory. Therefore, even if Plaintiff could establish a prima facie case, she has not raised a triable issue as to whether Defendant's legitimate, nondiscriminatory reason for her termination was pretext for race discrimination. Accordingly, Defendant is granted summary judgment on Plaintiff's Title VII and NYSHRL race discrimination claims. *See, e.g.*, *Fletcher*, 775 F. App'x at 13; *Barriera v. Bankers Tr.*, No. 98 CIV. 3641 (MBM), 2003 WL 22387099, at *6 (S.D.N.Y. Oct. 20, 2003).

### B. Age Discrimination

#### 1. Plaintiff's Prima Facie Case

Plaintiff was over 40 years old during the period when she faced the alleged discrimination and her employment was terminated. Def.'s Rule 56.1 Stmt. ¶¶ 2, 17; Pl.'s Resp. Def.'s Rule 56.1 Stmt. ¶ 2. Plaintiff therefore easily establishes the first and third prongs of her prima facie case of age discrimination. The Court assumes, without deciding, that Plaintiff could establish the second and fourth prongs of her prima facie case of age discrimination. *See Nixon v. TWC Admin. LLC*, No. 16-CV-6456 (AJN), 2019 WL 1428348, at *7 (S.D.N.Y. Mar. 29, 2019) (assuming *arguendo* that Plaintiff establishes prima facie case as the "burden is not a

heavy one" under Second Circuit case law); *Idrees v. City of New York*, 04 Civ. 2197(LAK)(GWG), 2009 WL 142107, at \*9 (S.D.N.Y. Jan. 21, 2009) ("Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action.").

### 2. Defendant's Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment

Defendant argues that it had a legitimate, non-discriminatory rational for terminating plaintiff—her poor performance. "While the defendant's burden is 'one of production, not persuasion' and therefore this court cannot undertake a credibility assessment, the defendant must offer evidence sufficient for the trier-of-fact to conclude that the proffered reason was the actual cause of the complained of adverse action." *Terry*, 336 F.3d at 145 n.17 (2d Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).

Defendant has produced overwhelming evidence establishing that Plaintiff was terminated due to her deficient performance. In Plaintiff's 2013 performance review, Paszek stated that Plaintiff's "performance is lacking" as the "assigned task[s] are not done in a timely manner and lack technical and overall presentation detail that is expected from a Senior Engineer." Levin Decl. Ex. A at Ex. 3 ("2013 Performance Review"). The review also found that Plaintiff "appears to be uncomfortable speaking with other co-workers" and "could improve her performance by improving her working relationship with others." *Id*. Instead of improving her performance after she received an overall performance rating of "Needs Some Improvement" in 2013, Plaintiff's performance appears to have deteriorated further by 2014 when she received an "Unsatisfactory" rating. *Id*.; Def. Rule 56.1 Stmt. ¶ 11; Paszek Aff. ¶ 5 & Ex. A ("2014 Performance Review"), at 7. In her 2014 review, Paszek provided a detailed assessment of

Plaintiff's unsatisfactory performance of her assigned tasks and her failure to complete those tasks in a timely manner. *See* 2014 Performance Review at 3-4. He also noted Plaintiff's "recurring unacceptable behavior" communicating with her coworkers, in particular that her "verbal communication with her Team Leader was often combative and argumentative." *Id.* at 5. Moreover, Defendant urges that even once Plaintiff was placed on a PIN, her work product was still late and riddled with errors. Paszek Aff. ¶¶ 8-10 & Exs. B-C.

Although the parties dispute whether Plaintiff ultimately received three or four PIN assignments and whether she timely submitted her final assignment, the Court finds this question of fact immaterial. Even discounting Plaintiff's performance on her final PIN assignment, Defendant has produced sufficient evidence to establish it had a legitimate, non-discriminatory reason to terminate Plaintiff in light of the two years of negative performance reviews and poor execution of the first two PIN assignments. *See, e.g.*, *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (affirming district court holding that defendant had satisfied its burden to articulate a legitimate, nondiscriminatory reason for plaintiff's termination where plaintiff had received a negative mid-year performance review two months prior to his termination).

### 3. Pretext

In light of Defendant's evidence establishing a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to establish a triable issue as to whether Defendant's proffered reason is pretextual. In order to survive summary judgment under the ADEA, Plaintiff must raise sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence "'that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a

requirement that age was the employer['s] only consideration, but rather that the adverse employment action[] *would not have occurred without it*." *Delaney*, 766 F.3d at 169 (internal quotation marks and citations omitted). "[W]here there is overwhelming evidence that the employer had a legitimate reason to dismiss an employee, the employee must present more than [a] few isolated pieces of contrary evidence to survive summary judgment." *Richardson v. Comm'n on Human Rights & Opportunities* 532 F.3d 114, 125 (2d Cir. 2008) (citations omitted).

The Court finds Plaintiff has failed to raise a genuine dispute of material fact regarding whether Defendant's proffered reason for her termination was pretext for age discrimination. Plaintiff alleges that Defendant rejected her request to attend a stability training class to assist with her final PIN assignment yet allowed a younger employee to attend a similar class. *See* Pl. Opp. MSJ at 6; Pl. Dep. Tr. 105-07. Not only does she not provide any evidence establishing that Defendant allowed a younger employee to take a training class in order to complete a PIN assignment, she also fails to establish that "she was similarly situated in all material respects to the individual[] with whom she seeks to compare herself," as required to make out a disparate treatment claim. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Further, Plaintiff has acknowledged that neither Thompson nor Forte ever made negative comments about her age. Pl. Dep. Tr. at 25:2-7, 31:22-32:2, 37:23-38:7. Moreover, Plaintiff alleges only a single incident in which Paszek is reported to have called her "too old and too slow" in their March 4, 2015 meeting regarding her second PIN assignment. Pl. Aff ¶ 10; Pl. Dep. Tr. at 32:3-9.[6] Defendant argues that Plaintiff's single allegation about Paszek's comment, even if true, is insufficient to establish a claim of age discrimination under the ADEA. Def. MSJ at 6. The Court agrees.

The Second Circuit has identified four factors to consider when deciding what weight to

---

[6] As described earlier, *see supra* note 2, Plaintiff initially testified that both Paszek and Thompson called her "too old," but later clarified that only Paszek had done so and that Thompson never referenced her age.

18

accord isolated remarks suggestive of discriminatory bias: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals*, 616 F.3d 134, 149 (2d Cir.2010); *see also Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (applying the stray remark factors to an ADEA claim). "[N]one of these factors should be regarded as dispositive," but they provided a "useful approach" for evaluating the weight to be accorded a remark. *Henry*, 616 F.3d at 150.

First, although Paszek was Plaintiff's supervisor, he did not make the decision to fire Plaintiff. After Forte consulted with his Vice President, Brian Horton, and the Human Resources Department, he "advised" Paszek that "the decision *had* been made to terminate" Plaintiff. Paszek Aff. ¶ 12 (emphasis added). "[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). For example, in *Nixon v. TWC Administration*, the plaintiff's supervisor called her a "dinosaur" and asked her why she did not retire or leave in the months leading up to her termination. No. 16-CV-6456 (AJN), 2019 WL 1428348, at *8 (S.D.N.Y. Mar. 29, 2019). The court found the remark "insufficient to create a genuine dispute of material fact as to the cause of . . . termination" because the plaintiff "fail[ed] to explain how her supervisor's discriminatory motives or actions could be imputed to the makers of that decision." *Id*. at *9.

The other factors suggest that the remark "can bear some weight in demonstrating discriminatory bias." *Fried*, 500 F. App'x at 41. The remark was allegedly made on March 4, 2015, only two and a half months before Plaintiff's termination. Additionally, a reasonable juror could find the remark discriminatory. Moreover, the remark was not "remote and oblique . . . in relation to the employer's adverse action" as it was made in the context of Paszek's review of Plaintiff's performance on the second PIN assignment. *Tomassi*, 478 F.3d at 115 (2d Cir. 2007). Paszek later shared his assessment with Forte that Plaintiff had not adequately satisfied the requirements of her PIN, which in turn led to Forte seeking Plaintiff's termination.

However, Plaintiff's "burden at the third step of analysis required [her] to show more than possible age bias; [s]he was required to adduce sufficient evidence to permit a reasonable jury to find that 'but for' [Defendant's] age bias, [s]he would not have been terminated. The remark cannot bear that weight when considered against the overwhelming documentary evidence" supporting Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff—her poor performance. *Fried*, 500 F. App'x at 41 (2d Cir. 2012); *see also Nixon*, 2019 WL 1428348, at *8. Indeed, "[s]tray remarks alone are insufficient to defeat summary judgment." *Martinez v. New York City Transit Auth.*, 672 F. App'x 68, 71 (2d Cir. 2016).

Moreover, the circumstantial evidence indicates that Plaintiff's termination was not based on her age. Forte is approximately ten years older than Plaintiff, and according to Paszek, three of the employees who report to him—including Thompson—were also older than Plaintiff. *See* Forte Aff. ¶ 7; Paszek Aff. ¶ 14. "In sum, even when the record is viewed in the light most favorable to plaintiff" and the Court accepts as true that Paszek made the alleged remark, "no reasonable jury could find that detailed and consistent concerns with plaintiff's work performance were only a pretext for adverse employment actions that were really motivated by"

age discrimination. *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 744 (2d Cir. 2014). Accordingly, Defendant is granted summary judgment on Plaintiff's ADEA and NYSHRL age discrimination claims.

## II. Federal and NYSHRL Retaliation Claims

Plaintiff also asserts that she was wrongfully terminated in retaliation for her internal complaints. Like her discrimination claims, Plaintiff's Title VII, ADEA, and NYSHRL retaliation claims are governed by the burden-shifting framework set forth in *McDonnell Douglas*. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). Pursuant to that framework, in order to establish a prima facie case of retaliation in response to a motion for summary judgment, a plaintiff must submit sufficient admissible evidence to allow a trier of fact to find that: "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam); *see also Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 34–35 (2d Cir. 2018) (stating equivalent standard for ADEA retaliation claim). "This showing creates a presumption of retaliation, which the defendant may rebut by articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (internal quotation marks omitted). If the defendant does so, the burden shifts back to the plaintiff to show that retaliation was a "but-for" cause of the adverse action, not simply a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action—it is enough that the adverse action would not have occurred in the absence of the retaliatory motive." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70

(S.D.N.Y. 2016) (quoting *Nassar*, 570 U.S. at 360-61).

### A. Plaintiff's *Prima Facie* Case

### 1. Plaintiff's Protected Activity

Defendant argues that Plaintiff did not engage in any activity that is protected by Title VII or the ADEA.  *See* Def. MSJ at 7.  It is undisputed that Plaintiff filed various complaints with Con Edison before she was terminated, including: (1) a November 18, 2014 complaint to Richard Bagwell, Con Edison's Vice President of Human Resources, Pl. Aff. ¶ 7; (2) several additional complaints from December 2014 through January 2015 to Christine Roman, a Human Resources representative, *id*.; (3) a February 5, 2015 meeting with Vincent Frankel, a Director at Con Edison, to discuss her 2014 performance review and her perception that Paszek, Thompson, and Forte were discriminating against her, *id*. ¶ 8; (4) a March 6, 2015 complaint with Nicole Leon, Con Edison's EEO Director, regarding Paszek's alleged March 4, 2015 comment that Plaintiff was "too old and too slow," as well as Plaintiff's perception that she was facing ongoing discriminatory treatment from Paszek and Thompson, *id*. ¶ 11; (5) a May 5, 2015 meeting with Lonnie Allbaugh, an EEO representative, to address Plaintiff's EEO Complaint. *id*. ¶ 16; and (6) a May 13, 2015 email to Allbaugh claiming that Plaintiff was "still being harassed" by Paszek, *id*. at Ex. H.

Defendant argues that Plaintiff's complaint to Human Resources was about her perception of generalized unfair treatment rather than any allegation of discrimination based on race or age, citing Plaintiff's deposition testimony.  *See* Def. MSJ at 7-8 (citing Pl. Dep. Tr. at 97, 99-10).  The Court agrees.  For Plaintiff's complaint to constitute protected activity, she "must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001).  "And not just any law—the plaintiff is 'required to have had a good faith, reasonable belief that

[she] was opposing an employment practice made unlawful by Title VII' [or the ADEA]." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *McMenemy*, 241 F.3d at 285 (2d Cir.2001)). "A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Kelly*, 716 F.3d at 15. For example, the Second Circuit has found that a "plaintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination." *Drumm v. Suny Geneseo Coll.*, 486 F. App'x 912, 914 (2d Cir. 2012). The factual record does not support an inference that Plaintiff complained to Human Resources about race or age discrimination that she had a reasonable belief violated Title VII or the ADEA. In Plaintiff's deposition, she alleged that she complained to Human Resources that she was forced to correct Thompson's mistakes. Pl. Dep. Tr. at 97. When Defendant's counsel asked, "In your complaint to human resources, did you say they are doing this to me because I am Asian and I am older?" Plaintiff testified, "Not to her. I say [sic] unfair treatment." *Id*; *see also id.* at 115. Similarly, Plaintiff testified that when she met with Vincent Frankel, she "complain[ed] about unfair treatment" but did not complain that she was being treated unfairly because of her race or age. *Id*. at 99-100. The Court therefore finds that Plaintiff's complaints to Human Resources and her complaint to Frankel did not constitute protected activity for purposes of her Title VII, ADEA, or NYSHRL retaliation claims.

By contrast, Plaintiff testified in her deposition that she complained to Nicole Leon, the EEO Director, about age and race discrimination. Pl. Dep. Tr. at 98:3-9. The Court therefore finds that a reasonable juror could conclude that Plaintiff's EEO complaints—including her initial March 6, 2015 complaint, her May 5, 2015 meeting, and her May 13, 2015 follow-up

email—constituted protected activity.

### 2. Defendant's Awareness of Plaintiff's Protected Activity

Defendant argues that there is no evidence that Forte or anyone else involved in Plaintiff's termination was aware of her EEO complaint at the time they decided to terminate her. *See* Def. MSJ at 8. "However, for purposes of a prima facie case, a plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the prima facie case." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) ("[N]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."). As Plaintiff filed complaints with Con Edison's EEO Department, she has established "general corporate knowledge" and meets the second prong of her prima facie case.

### 3. Materially Adverse Actions

To establish a materially adverse action, a plaintiff must show that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). Plaintiff was terminated, and thus easily establishes the third element of her prima face case, as Defendant concedes. *See* Def. MSJ at 7.

### 4. Causation

A plaintiff may establish the requisite causal connection either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the

plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Defendant argues that Plaintiff cannot establish a causal connection between her protected activity and her termination, as she had already received negative performance reviews, had been placed on a PIN, and had received negative feedback on her first two PIN assignments before she filed her internal EEO complaint on March 6, 2015. *See* Def. MSJ at 8. Therefore, Defendant maintains the impetus for Plaintiff's termination was her poor performance—not her EEO complaint. *Id.* However, Plaintiff's complaints to EEO—including her March 6, 2015 complaint, her May 5, 2015 meeting, and her May 13, 2015 email—were followed closely in time by her termination on May 19 or 20, 2015. Accordingly, the Court assumes, without deciding, that Plaintiff has met her burden of establishing causation. *See, e.g.*, *Gorzynski*, 596 F.3d at 111 (holding plaintiff met her "minimal burden of making a prima facie case for retaliation" where she complained less than four months before she was terminated).

### B. Defendant's Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

Defendant argues that even if Plaintiff can establish a prima facie case of retaliation, Defendant had a legitimate, non-discriminatory reason for her termination—her poor performance. *See* Def. MSJ at 8-9. As described above in the context of Plaintiff's discrimination claim, the Court holds that Defendant has met its burden of establishing a legitimate, non-discriminatory reason for Plaintiff's termination.

### C. Pretext

Finally, Plaintiff fails to present sufficient evidence from which a reasonable jury could conclude that Defendant's proffered reason for her termination was pretext for retaliation. At this stage, Plaintiff must prove that retaliation was the "but-for" cause of her termination, not simply a "substantial" or "motivating" factor in the employer's decision. *Nassar*, 570 U.S. at

360. Significantly, it is undisputed that Plaintiff's supervisor, Paszek, took issue with her work performance and manner of communication well before she filed her EEO complaint on March 6, 2015. *See Ya–Chen Chen*, 805 F.3d at 70–71 (holding that an employer's stated concerns with an employee's collegiality were not pretextual where the employer "took issue with [the employee's] collegiality long before" she filed a complaint and "maintained a consistent perspective afterwards"); *Weinstock*, 224 F.3d at 45 (noting that "the consistency of the viewpoint expressed by [a supervisor] . . . only further supports [the employer's] proffered nondiscriminatory reason" for taking an adverse employment action). As described above, Paszek rated Plaintiff's performance "Needs Some Improvement" in her 2013 Performance Review, rated her performance "Unsatisfactory" in her 2014 Performance Review, placed her on a PIN, and found her performance on her first two PIN assignments unsatisfactory—all before Plaintiff ever filed her EEO complaint.

Paszek's supervisor, Forte, reviewed Plaintiff's PIN assignments in "early" May 2015, approximately two months after she filed her EEO complaint. However, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Moreover, Forte stated in a sworn affidavit, "At the time I reviewed Ms. Fu's performance [on her PIN assignments], and during the discussions I had with Paszek, Mr. Horton (my supervisor) and the Human Resources department concerning the termination of Ms. Fu, I was not aware that she had filed such a complaint [with Con Edison's EEO office], nor did anyone with whom I discussed the matter of her termination indicate that they were aware of such a complaint." Forte Aff. ¶ 6. Plaintiff disputes this statement on the grounds that she received an email on May 14, 2015 from Allbaugh stating that the investigation into her EEO complaint was "proceeding" and that "[w]itnesses are being

interviewed and information is being gathered." Pl. Aff. Ex. H. This email in no way indicates, however, that the EEO office had interviewed Forte about Plaintiff's EEO complaint in advance of his review of her PIN assignments or his conversations concerning her termination.

In light of the overwhelming evidence that Plaintiff was terminated due to her poor performance, the Court holds that no reasonable jury could conclude that retaliatory animus arising from her decision to file an EEO complaint was the but-for cause of her termination. *See Ya-Chen Chen*, 805 F.3d at 71-73. Accordingly, Defendant is granted summary judgment on Plaintiff's federal and NYSHRL retaliation claims.

### III.    FMLA Interference Claims

Defendant next argues that Plaintiff cannot establish that she was terminated for taking FMLA leave. "To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [ ] any right provided under this subchapter.") "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424. "To defeat summary judgment, a plaintiff must present a genuine issue of material fact as to each unconceded element of an FMLA interference claim." *Lievre v. JRM Constr. Mgmt., LLC,* No. 17-CV-4439 (BCM), 2019 WL 4572777, at *13 (S.D.N.Y. Sept. 20, 2019).

The "FMLA is not a shield to protect employees from legitimate disciplinary action by

their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 175 (2d Cir. 2006) (quoting *Geromanos v. Columbia Univ.*, 322 F.Supp.2d 420, 429 (S.D.N.Y. 2004)). "[I]t is well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave." *Hill v. New York City Hous. Auth.*, 220 F. Supp. 3d 499, 506 (S.D.N.Y. 2016) (quoting *Pearson v. Unification Theological Seminary*, 785 F.Supp.2d 141, 162 (S.D.N.Y. 2011). "Moreover, 'the FMLA does not prevent an employer from terminating an employee during a period of leave, so long as the taking of FMLA leave was not the cause for the termination. This is so because the FMLA does not entitle an employee taking an FMLA leave to any greater rights than employees who have not taken such leave.'" *Id*. (quoting *Santos v. Knitgoods Workers' Union, Local 155*, No. 99-CV-1499, 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999)).

No reasonable jury could find that Plaintiff "was discharged for taking the leave or that it was a negative factor in [Con Edison's] decision to fire her." *Hill*, 220 F. Supp. 3d at 506 (quoting *Pearson*, 785 F.Supp.2d at 162). "Not only is it evident that she was fired . . . for unsatisfactory work performance that long preceded her FMLA leave request, 'but there is not a scintilla of evidence for concluding that her 'leave' played any role in this employment decision.'" *Id.* (quoting *Pearson*, 785 F.Supp.2d at 162). As described above, Plaintiff received an "Unsatisfactory" performance rating, was placed on a PIN, and received negative feedback on her first two PIN assignments—all before she ever requested FMLA leave. When Plaintiff was asked at her deposition whether "anybody ever [said] anything that led [her] to believe that it was the fact that [she was] on FMLA that caused [her] to be fired," she responded "no." Pl. Dep. Tr. at 111. Accordingly, the record indicates that Plaintiff "would have been terminated regardless

of the leave." *Hill*, 220 F. Supp. 3d at 506. The Court therefore finds that Plaintiff has failed to establish a genuine issue of material fact on her FMLA interference claim.

## IV. NYCHRL Claims

Finally, a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Supreme Court has commented that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Courts in this district have declined to exercise supplemental jurisdiction over NYCHRL claims after granting defendants' motions for summary judgment on ADEA claims where, as here, the "extensive discovery already taken is likely sufficient to enable [the NYCHRL] claims to be evaluated in state court without any additional discovery." *Nixon*, 2019 WL 1428348 at *12 (quoting *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 394 (S.D.N.Y. 2013)); *see also Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) ("Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims."). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims and thus dismisses those claims without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

The Clerk of Court is respectfully directed to terminate the motion at Docket Entry 66 and close

this case.

SO ORDERED.

Dated:     March 25, 2020
           New York, New York

_____
Ronnie Abrams
United States District Judge